Dᵒⁿ Jᴀᴍᴇs Knight Oʀᴅ III, Esq. (UT Bar No. 14007)
The Ord Firm, PC
P.O. Box 16688
Salt Lake City, UT 84116
Telephone: +1.310.494.6296
Fax: +1.801.901.8181
E-mail: James.Ord@TheOrdFirm.com

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| William Morris, Esq.,<br><br>         Plaintiff,<br><br>v.<br><br>City of Harrisville, Weber Co. Utah,<br>AND<br>Michelle Tait,<br>AND<br>Jennie Knight,<br>AND<br>Cynthia Benson,<br>AND<br>Jessica Hardy,<br>         Defendants. | **COMPLAINT**<br><br>Case No.: 2:24-cv-00093<br><br><br><br>Jᴜᴅɢᴇ: Tʜᴇ Rɪɢʜᴛ Hᴏɴᴏʀᴀʙʟᴇ _____ |

COMES NOW Plaintiff William M. Morris Esq. by and through Counsel and complains

of the Defendants as follows:

### NATURE OF ACTION

This is an action against the City of Harrisville, Weber Co., Utah for wrongful

termination in violation of the Utah Protection of Public Employees Act, Utah Code Ann. §

67-21-1, *et seq.* ("the Whistleblower Act"), for retaliation in violation of Title VII of the

Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and for breach of contract

for violating its own policies, and breaches of the implied covenant of good faith and fair dealing. It is also an action against Defendants, in their individual and official capacities, for violating his right to free speech and due process, and for tortious interference with economic relations in violation of 42 U.S.C. § 1983.

## REQUESTED RELIEF

Plaintiff seeks an Order of the Court awarding him the full reinstatement of his employment with the City of Harrisville, including but not limited to: all lost wages since his forced resignation, all state and federal benefits, including all fringe benefits, seniority rights, state retirement, etcetera, that he would have earned, plus reasonable statutory interest. Plaintiff seeks an award for unspecified tort damages. And an award of punitive damages. Plaintiff also seeks an award of attorney's fees and costs for all attorney fees and costs incurred since his ouster.

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Morris is an individual residing in Weber Co., Utah.

2. Defendant City of Harrisville is a municipality in Weber Co., Utah, was Plaintiff Morris' employer and in all counts is being sued as

3. Defendant Tait is an elected official and employee of Defendant City of Harrisville, is the Mayor of the city of Harrisville, resides in the City of Harrisville, Weber Co., Utah, at all times relevant to the claims raised herein, and is being sued in her official and individual capacities.

4. Defendant Knight is an employee of Defendant City of Harrisville, resides in Weber Co., Utah, at all times relevant to the claims raised herein, and is being sued in her official and individual capacities.

5. Defendant Benson is an employee of Defendant City of Harrisville, resides in Weber Co., Utah, at all times relevant to the claims raised herein, and is being sued in her official and individual capacities.

6. Defendants - Hardy and Benson are employees of Defendant City of Harrisville, reside in Weber Co., Utah, at all times relevant to the claims raised herein, and are being sued in their official and individual capacities.

7. Jurisdiction is proper in the United States District Court in and for the District of Utah, Central Division Under 28 U.S.C. §1331.

8. Venue is proper in this Court under pursuant to 28 U.S.C. § 1391, because the causes of action arose within this District

9. Plaintiff filed a timely Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") in February 2023, alleging retaliation under Title VII and 42 U.S.C. §1983, for protected activity concerning religion, sex, race, and national origin, and harassment, and Discrimination under Title VII on the basis of religion, sex, race, and national origin.

10. Plaintiff has exhausted his administrative remedies through the EEOC and on 29 September 2023 EEOC issued a Right To Sue Letter, but the letter was not delivered to Mr. Morris or his counsel until 28 December 2023 making his 90 day window to sue begin on 28 December 2023. (See Letter from EEOC and email chain Attached as Exhibit "A")

11. On 13 January 2023 Plaintiff sent a Notice of Claim pursuant to the Governmental Immunity Act of Utah, Utah Code Ann. § 63G-7-401 *et seq*. alleging that Mr. Morris was wrongfully terminated in violation of the Whistleblower Act (among other violations).

12. Defendants did not respond directly to the Notice of Claim, the time for doing so having expired..

13. An EEOC matter was opened.

14. Defendants responded to the EEOC matter.

15. The EEOC never subpoenaed any information, nor did it interview most of  Mr. Morris witnesses.

## GENERAL FACTUAL ALLEGATIONS

### Background

16. The City of Harrisville, in Weber County, Utah is a small insular town with fewer than 10,000 residents. Until recently, the town has not had much in the way of diversity of religious faiths, racial makeup, national origins, sexual orientation, gender identity and expression, nor much diversity of outside culture.

17. In recent years, changes have come to Harrisville that have begun to challenge its longstanding views of its heritage by introducing new and diverse people, cultures, subcultures, and experiences.

18. Harrisville officials have not responded well to the perceived challenge to their identity.

19. Mr. William Morris, Esq., City Attorney and City Administrator, served Harrisville for approximately sixteen (16) years and became privy to the City's ill responses to its demographic changes when younger and newer residents began to complain that the City was discriminating on the basis of religion, race, sex, and national origin.

20. The result was that Mr. Morris witnessed, investigated, and tried to stop a series of discriminatory and retaliatory events in employment, policing, code enforcement, and prosecutions.

21. At the time of his forced resignation Mr. Morris was investigating Defendants Knight and Tait, and the city of Harrisville for allegations of racial, religious, and sex discrimination.

22. Mr. Morris had opened a preliminary investigation due to complaints brought to him by citizens; he was still in the stage of determining scope of, and whether the nature of, the allegations actually implicated a personnel issue, or an inadvertent policy cause.

23. A personnel cause would implicate impropriety and would necessitate an outside agency's involvement to complete the investigation and make personnel recommendations to city council or make reference to the prosecutorial screening panel or other relevant state oversight agencies)

24. As City Attorney, Mr. Morris was required to protect his client (the City) from liabilities that arose by outside forces and those forces arising from within the organization.

### Mr. Morris' Employment History

25.    Mr. Morris is highly qualified for his job with Harrisville City.

26.    An attorney for over 20 years, Mr. Morris has an unblemished record of employment and business ownership.

27.    Mr. Morris holds a degree in Political Science from Weber State University, a Juris Doctor from University of Wyoming and has been an active member of the Utah Bar in good standing since 2001.

28.    He has served as a city attorney and city administrator in multiple jurisdictions, as the Ethics Commission Chair for West Jordan City and as the Administrative Law Judge for Saratoga Springs City.

29.    He has drafted the model city code and enforcement policies for multiple jurisdictions and other jurisdictions have copied his work for years for their own codes and policies.

30. Mr. Morris continues to be an efficient and effective city attorney and city administrator.

31. Mr. Morris was hired by Harrisville City in 2005 as an independent contractor to serve as the land use planner because he was already providing the same services for the City of Marriott-Slaterville; the two had shared interests, development trajectories, and boundaries.

32. In 2008 Mr. Morris' contract was amended to also include part-time City Administrator.

33. A few years later Mr. Morris was also hired as City Attorney and Prosecutor.

34. From 2005-2022 Mr. Morris never received any formal or informal reprimands on his personnel file.

35. When Mr. Morris was hired in his last capacity, the City had a severance package for all Department Heads to which he is vested. The City has subsequently changed their website on this issue.[1]

**Mr Morris' Job Responsibilities as City Administrator**

36. The City Administrator is a Department Head responsible to oversee the Administrative Department with no oversight over other departments; the role includes a certain level of discretion on how to manage code compliance cases; make recommendations to the Planning Commission, City Council, and Mayor; oversee personnel in the Administrative Department; assist in planning and managing the budget; and coordinate with the administration to prepare and submit a balanced budget to the City Council for approval each year.

37. Other duties were also assigned as needed.

---

[1] https://harrisville.municipalcodeonline.com/book?type=policies#name=B-1-11_Department_Heads

**Mr Morris' Job Responsibilities as City Attorney and Prosecutor**

38. As City Attorney and City Prosecutor Mr. Morris was to be afforded prosecutorial discretion fee from political interference, and a certain level of independent discretion in other matters that all attorneys inherently have when determining how to manage a case.

39. While ethically, the client ultimately controls their case, the client cannot treat an attorney as a hired gun, nor can they ask the attorney to commit crimes, nor violate the law, nor require that an attorney violate the rules of Professional Conduct on their behalf. (See Rule 1.2.1 of the Rules of Professional Conduct)

40. In the event that a client demands such from an attorney, the attorney is obligated under the Rules of Professional Conduct to inform the client of their inability to perform such functions and to resign if the client does not desist. (See comments to Rule 1.2.1 of the Utah Rules of Professional Conduct[2])

41. City attorneys represent the city, not the executives.

42. The city attorney would draft the legal policies and the city council would pass them.

43. In the event of allegations of malfeasance of a city employee the protocol is for the Attorney to make a preliminary inquest to discover foundation of the claims, scope, implications, and then report it to the city council. The city council bears oversight responsibility for investigation, sending it to a third party agency for that, and discipline.

44. Where the alleged offender is the Mayor, correct protocol is for the Mayor to be recused and city council to appoint the Mayor Pro Tem to oversee the investigation, issue a final report, and city council take corrective action.

---

[2] https://legacy.utcourts.gov/rules/view.php?type=ucja&rule=13-1.02

45.     Where policy impropriety is alleged, the city attorney recommends policy changes to city council to prevent future impropriety.

**Problems Begin to Emerge With Sex Discrimination At Harrisville City**

46.     After the election of Defendant Tait, things continued as normal for a while, however, at some point Defendant Tait began to change towards Mr. Morris. It was largely after Defendant Tait learned that Mr. Morris was gay, *and* was married to a man.

47.     At first it started with changing the subject whenever he would mention his husband in passing, then eye rolling, lip pursing, and breath holding, etc.

48.     Then refusal to call Mr. Morris' husband his spouse or husband and both Defendants Tait and Knight would go out of their way to avoid using the term. And would then also use offensive dog whistle terms to refer to his sexual orientation, terms like "his personal life", "his lifestyle", and "the gay lifestyle"[3]; Mr Morris took this as Mayor Tait did not like to recognise Mr. Morris homosexual marriage.[4]

---

[3] The term "lifestyle" or "the gay lifestyle" when referencing homosexuals is based on the pretext that homosexuality is a choice and not an immutable characteristic. Use of the term was a legal strategy developed by anti gay activists. The term "Immutable characteristic" is a legally operative term in 14th amendment jurisprudence. By using the offensive terms "lifestyle" and "the gay lifestyle" the party using the term is signaling to others that the speaker rejects the identity of LGBTQ+ people and rejects their legal right to equal protection. This is effectively stating to the gay person - Your humanity and equality under the law is not recognised here. This is tantamount to using the N-word with black people or the term "C--lie" for South Asians. It is highly offensive despite its seemingly neutral nature. It is widely recognised an an anti-gay dogwhistling. For further discussion contact GLAAD.

[4] For reference, Utah was at the forefront of the Marriage Equality Movement. It is well documented in the national and international press that the Mormon Church and its members funded millions upon millions of dollars towards preventing gay people from being married in a worldwide campaign to prevent them from having equal rights under the law. Afterwards, many Mormons have continually refused to acknowledge the legitimacy of gay people's marriages by refusing to use the terms spouse, or husband or wife when referring to a same sex spouse. This has created a continual environment where homosexuals are exposed to highly offensive terms that are dog whistles for informing them that the person with whom they are speaking is antiLGBTQ, and does not agree with their having equal protection.

49.     As Defendant Knight and Defendant Tait became closer as friends these behaviors and others akin thereto began to escalate, they escalated further when Defendant Knight's daughter left to serve as an LDS missionary during the pandemic.

50.     Those events escalated during the Pandemic of 2020-2022 culminating in Mr. Morris forced resignation.

51.     The Defendants began to engage in activities that changed the work landscape and created a hostile work environment for Mr. Morris and others.

52.     In late 2020/early 2021, about 1 year Prior to Mr. Morris, Harrisville fired its only other gay employee on the pretenses of not being able to afford him; and then replaced him with a higher paid employee that fit with the non-gay demographic Defendants Knight and Tait appear to be establishing in the city.

53.     The actions Defendants Tate and Knight used consisted of misuse of city powers for political targeting (not a political party or candidate but a particular political ideology that favored white, hetero, LDS, folks and exhibited dislike or disfavor or those who did not meet the favoured demographic), discrimination on the basis of race, religion, sex, and national origin, and retaliation against outside parties and those that challenge this new politics. And those same behaviours were then turned on Mr. Morris.

**Sex Discrimination, Retaliation for Reporting It, And Blackmail Directed At Mr. Morris**

54.     Mr. Morris is also employed at the City of Marriott-Slaterville.

55.     On or about 2 October 2020, at Marriott-Slaterville City, a city employee was accused of sex discrimination and creating a hostile work environment by more than one employee.

56.     The nature of the matter was nothing as drastic as this case.

57.    Mr. Morris was one of the complainants in that personnel matter. That incident had to be investigated, and the city took action to reprimand the errant employee.

58.    To avoid all conflicts of interest Mr. Morris recused himself and the city brought in an outside attorney from the law firm of Snow Christiansen and Martineau.

59.    Attorney Camille Johnson was assigned to the matter but soon left to be the LDS Relief Society General President, and attorney Scott Young took her place.

60.    Marriott-Slaterville never gave Mr. Young permission to release Mr. Morris name, the name of the other victim, or the name of the employee who was the alleged aggravator in that matter, or any information about that matter.

61.    Some time later Mr. Morris brought in Mr. Young to assist in another personnel matter at Harrisville City.

62.    Mr. Morris recused himself from that Harrisville matter because the employee in that matter was one of his former clients. The two matters overlapped slightly in time periods.

63.    Mr. Young sent an email with the formal reprimand letter for the Marriott-Slaterville case to Defendant Tait who read the email, opened the attachment, read the confidential reprimand letter, and later after gathering more information, confronted Mr. Morris specifically about the sex discrimination complaint.

64.    After that date, Defendant Tait became increasingly aggressive towards Mr. Morris.

65.    Sending the reprimand letter to the wrong people breached attorney-client privilege.

66.    In the latter half of 2021, Mr. Morris received complaints from City residents citing discrimination by Defendant Tait and Defendant Knight occurring toward minority populations and was conducting preliminary investigations of the same pursuant to his duties as City Attorney.

67.     Roughly four months later when blackmailing Mr. Morris, to force his resignation, Defendant Tait disclosed to that she and Mr. Young had conspired and coordinated to develop a three-part plan to oust Mr. Morris.

68.     At the time of Mr. Morris' ouster, he knew that Harrisville City had no open case files or matters with Young or Snow Christensen and Martineau because he was the City's attorney and administrator who was the responsible party for opening any matters with outside firms, and for overseeing them.

69.     Even in cases of Mr. Morris' recusal, he would still do the initial set up to hire the outside firm and then step back.

70.     At Mr. Morris' "firing meeting" where Defendant Tait blackmailed him with kompromat of an implied sexual nature, Defendant Tait told him that her and Young colluded to come up with a three (3) point plan to get rid of Mr. Morris.

71.     Mr. Morris sent a GRAMA request to review the documents related to SCM and Mr. Young's alleged involvement with the firing.

72.     After nearly a year of stonewalling, Mr. Morris made a GRAMA request for the legal bills the city received from Scott Young and his firm.

73.     Harrisville City disclosed the attorney's bills but redacted who/what Defendant Tait and Scott Young discussed in their calls and meetings and other communications.  (see Redacted Attorney Bills attached as Exhibit "B")

74.     The dates of those phone calls and discussed matters were in the two week period leading up to Mr. Morris' blackmailed resignation.

75.     Mr. Morris has sought those unredacted bills, But Defendant Harrisville City claims they were attorney client privileged.

76.    Scott Young and his firm as an agent of Marriott-Slaterville, violated the Marriott-Slaterville's attorney-client privilege by disclosing to Defendant Tait the protected reprimand letter. (see Utah Rules of Professional Conduct Rule 13-1.6 et. seq.)

77.    Scott Young and his firm, as agents for Marriott-Slaterville, had a duty under the Utah Rules of Professional Conduct Rule 13-1.7(a) & 1.7(a)(1) to not take any case or consult that that would be adverse to Mr. Morris, who was the victim and complainant in the Marriott-Slaterville matter.

78.    Scott Young and his firm, as agents for Marriott-Slaterville had a duty under the Utah Rules of Professional Conduct Rule 13-1.9(b) & (b)(2), and Rule 13-1.9(c) to not disclose and not use any information gained in the representation of Marriott-Slaterville to adversely affect the protected parties that were protected by the Marriott-Slaterville representation, including Mr. Morris.

79.    Scott Young and his firm, as agents for Marriott-Slaterville, had these same duties under the Utah whistleblowers act because they operated as agents for Marriott-Slaterville, and Agents for Harrisville.

80.    In addition Mr. Morris had previously given Defendant Knight specific instructions not to harass a gay couple living in this City who had fears that they were being targeted.

81.    Immediately upon Mr. Morris leaving Harrisville City the gay couple received letters from Harrisville City targeting them for alleged code violations.

## **Demanding Mr. Morris Violate the Law and Rules of Ethics and**

## **Retaliation When He Refused To Do So**

82.    Around the end of May or early June 2020, Mr. Morris was informed that a Harrisville City employee that was one of Mr. Morris' prior clients had an incident at the public works building late at night.

83.    Defendant Tait wanted the employee prosecuted, and wanted Mr. Morris to do it.

84.    Mr. Morris recused himself and Scott Young of Snow Christiansen and Martineu became conflict counsel in this case. (See Utah Rules of Professional Conduct 1.6, 1.7, and 1.9), Ogden City was asked to investigate to avoid any ethical conflicts.

85.     Scott Young drafted a return to work letter outlining the conditions for the employee's continued employment at the City, but around 24 July 2020, the employee was involved in another incident involving damaging a vehicle.

86.    Ogden City took approximately eighteen (18) months to complete the investigation, and the matter was referred to the Davis County Attorney's Office where the case was screened.

87.    After screening the case the Davis County Attorney declined to prosecute citing not enough evidence to obtain a conviction.

88.    At Mr.  Morris' employee annual review later that year, the City Council commended Mr. Morris for his hard work in the difficult times during Covid and with the many projects and problems occurring, including replacing the employee.

89.    Defendant Tait told Mr. Morris that she took issue with him not working to prosecute the employee as she wanted.

90.    Mr. Morris, again, explained the conflict of interest and noted that she was asking him to violate the Rules of Professional Conduct.

91.     Defendant Tait would not accept the concept of a conflict of interest by legal counsel and it had to be explained several times by both Mr. Morris, other members of the City Council, and Scott Young. (See City Council recordings)

92.     Mayor Tait refused to accept that Mr. Morris was not able to represent the Respondent in the matter against the employee.

93.     After that, Mayor Tait acted differently and secretively, and the retaliations became more acute.

94.     Things such as, not granting Mr. Morris access to the internet in city offices, and then refusing to let him work from, Ignoring federal and state health recommendations, and demanding that he work in the office in the middle of the pandemic, demanding he attend social functions during the pandemic, snide remarks and sideways glances, continually bringing up his refusal to violate the Rules of ethics and act as a hired gun for the city, and searching for reasons to attack Mr. Morris' unblemished record including the attempt to gather kompromat.

95.     The ratcheting up of the microaggressions created a toxic and hostile work environment.

96.     Even when Mr. Morris was fired, one of the justification Defendant Tait gave to city council for wanting him ousted, was that he would not represent the city against his former clients.

**The Day Of The Blackmailing**

97.     On Friday 4 February 2022 Defendant Tait called Mr. Morris whilst he was off work with his spouse and asked if Mr. Morris was out-of-town, and demanded that he appear in her office on Monday.

98.    When he arrived to work on Monday, 7 February 2022, Mr. Morris was summoned first to the Mayor's office. He was met by Defendant Tait and Defendant Knight and asked by Defendant Tait to retire and to endorse Defendant Knight to the City Council as his replacement.

99.    Mr. Morris pushed back and Defendant Tait then began to plead a soft case as to why Mr. Morris should resign in favor of Defendant Knight.

100.    Mr. Morris stated he at least desired to remain as City Attorney and City Prosecutor and noted several incomplete cases occurring.

101.    First Defendant Tait referenced she had written a list of concerns about Mr. Morris as her rationale, but Mr. Morris was never informed about the contents of this list.

102.    Defendant Knight interjected that she is worried for Plaintiff's health and mental health.

103.    Defendant Knight said that she doesn't want Mr. Morris to "end up like Pam" who was an employee on long-term disability from a health issue, the underlying understanding was that Defendant Tait had a few months previously been in Mr. Morris' office to talk about his long Covid symptoms and they discussed his health.

104.    Mr. Morris previously provided, and the City accepted documentation to Foster Batement the Finance/HR Officer from his doctor asking for more time for him to recover thus documenting Mr. Morris' temporary partial disability. No other documentation was sought by the City.

105.    The City also used that documentation to justify its Cares Act Funding that the City received from Covid.

106.    Mr. Morris reiterated the position of his doctor to Defendant Tait requesting patience and accommodation to recover from long Covid symptoms.

107.    Defendant Tait then pivoted in the conversation to saying that she was asking him to retire to "save face" and began making threats about exposing information she had about Mr. Morris to justify her request.

108.    She stated, I don't know if this is right, I don't know if this is the right thing  to do"  "I just want you gone."

109.    She specifically stated that "she had information about Mr. Morris that she would go public with if he didn't resign."

110.    Mr. Morris understood this to be a direct threat of blackmail using kompromat.

111.    The tone of her voice and her non-verbal cues seemed to suggest that the alleged kompromat was of a sexual nature.

112.    Mr. Morris' first fear and thoughts was that Defendant Tait was going to publicly defame and/or damage his professional name, and reputation to colleagues and the public.

113.    Then it immediately turned to a fear of what if she tracked down a former love interest and gathered nude photos or something of that nature, buy any alleged sexual kompromat would have been gathered through illegal or improper means.

114.    Nevertheless, Defendant Tait had previously (only a short few months prior) made passive aggressive comments about Plaintiff's whistleblower matter in Marriott-Slaterville.

115.    Mr. Morris is fairly guarded about his private life at work because LGBTQ employees have historically not been particularly welcome in those positions in small town Utah. But Defendant Tait's insinuations all seemed to point in that direction.

116.    This was one reason why for years when he would mention his husband he would not go into great detail, and especially so since Defendants Tait and Knight began to become more overtly anti-gay at work.

117.    For years Mr. Morris has volunteered for LGBTQ and at-risk minority organizations throughout Utah that serve at-risk populations so there were plenty of interactions, that while not illegal or unethical, would not suit Defendants Tait and Knight's new found political ideology.

118.    Mr. Morris was still reeling from the threat of blackmail when Defendant Tait then said she had consulted with attorney Scott Young to develop a three-part plan to force Mr. Morris' resignation.

119.    Mentally going automatically into attorney mode, Mr. Morris was confused because the Municipal Code at the time clearly indicated that the City Administrator could only be terminated by the City Council.

120.    Defendant Tait started mumbling portions of this three-prong plan that she had discussed with Scott Young which first included asking Mr. Morris to retire, then escalated to his ousting.

121.    Mr. Morris' mind started spinning so much of the rest of the conversation was lost with him trying to process what had just happened.

122.    Under the threat of exposing whatever kompromat Defendant Tait allegedly had, and to save-face, Mr. Morris reluctantly agreed to Defendant Tait's demands in fear for his career and the other retribution she would bring down on him.

**Defendant Tait Openly Retaliates Against Mr. Morris Before City Council**

123.    As ordered by Defendant Tait, Plaintiff announced retirement as City Administrator to the City Council at its meeting the next day on Tuesday, 8 February 2022, and requested to remain at the City Attorney and City Prosecutor.

124.    Defendant Tait and Defendant Knight had scheduled a closed meeting of the City Council allegedly to discuss the "professional competence" of an individual.[5]

---

[5] Under Utah open records laws all city council meetings must be recorded except in two exceptions, where there is discussion of the deployment of a security device and when the council is discussing the "professional competence of an individual".

125.    The City Council, Defendant Tait, Defendant Knight, Jessica Hardy, and Mr. Morris were present at the meeting where Mr. Morris discussed his retirement as City Administrator.

126.    At no time was his professional competence questioned or even discussed in the closed meeting.

127.    Mr. Morris inquired about his severance as clearly specified in the Personnel Policy Manual at the time.

128.    Defendant Tait and Defendant Knight became agitated at Plaintiff's discussion of severance and Plaintiff's wish to remain City Attorney and Prosecutor.

129.    Defendant Knight said Mr. Morris did not get severance as a part-time employee which Mr. Morris knows to be an outright lie since he helped draft the policy and Kenneth Martin, another part-time Department Head has received benefits under the same policy.

130.    Mr. Morris then asked to be treated as other former employees who received their severance under the Personnel Policy Manual.

131.    Mr. Morris asked if this was about the employee case from which Mr. Morris recused himself, reminding them that he was not a choice in his recusal. It was an operation of law.

132.    Defendant Tait then insisted that Mr. Morris should have represented the City against the employee and that it was evidence of Mr. Morris' disloyalty and lack of desire to do his job.

133.    The Mayor had previously brought up this issue three (3) times prior and each time she was asking Mr. Morris to violate the Rules of Professional Conduct.

134.    Mr. Morris objected and even pounded his fist on the table in a heated moment insisting that Defendant Tait could not ask him to violate the Rules of Professional Conduct, nor the law.

135.    Defendant Tait then made an outburst to cut him off and he feared she was going to use her yet undisclosed kompromat by disclosing whatever it was to everyone in the room.

136.    The Mayor then said something to the effect of "I didn't want to have to do this but…"

137.    She looked directly at Mr. Morris and looked angry and violent and was yelling that sentence.

138.    Mr. Morris just knew she was about to make good on her threat of blackmail.

139.    Mr. Morris quickly interjected and asked the entire room, looking at the various council members and said, "Why is she doing this?"

140.    Then, Mr. Morris informed Defendant Tait that:

"the only complaint against me, that I ever knew of, or that Defendant Tait ever made, was that of my conflict of interest in the matter of the employee that I once represented."

141.    Mr. Morris repeated that the Rules of Professional Conduct did not allow him to handle that case as he had a conflict of interest and had to recuse himself.

142.    This was the third time *in that meeting alone* that he had to tell Defendant Tait that he refused to violate the law at her behest.

143.    The City Council members were perplexed and Gover Whilhemsen on the City Council interjected and asked the Defendant Tait to wait until next week and sit down with Mr. Morris to find a resolution. Other council members seemed in agreement with this proposal.

144.    Council Member Max Jackson said that Defendant Tait acted like she was having PTSD from the 18 month ordeal with that former employee and that is not the case with Mr. Morris.[6]

145.    Defendant Tait also brought up the Planet Auto matter, attempting to make a case to city council that Mr. Morris had done something wrong in that case. But that case was one where a citizen complaint against an auto salvage company for clear and severe zoning violation, and the private company sued the citizen to attempt to pressure him into withdrawing his complaint. The

---

[6] Everyone in the room already knew and understood that they had already had meetings over the fact that the law prevented Mr. Morris from being involved in the conflict matter as Mr. Morris was the city employee's former attorney.

matter was resolved when Mr. Morris coordinated with the citizen's counsel. But not before Defendant Knight violated the parties' due process, and nearly cost the city tens of thousands of dollars. Ultimately it was resolved well but Mr. Morris verbally reprimanded Defendant Knight over it. (she was his direct report) And after that Defendant Tait and Defendant Knight both acted like they had chips on their shoulder towards Mr. Morris for his chiding of Defendant Knight.

146.    The City Council did not vote on it, and Mr. Morris was never dismissed by the City Council. No documentation was signed to effectuate the separation, and no actions were taken by the City Council or Mr. Morris to make it official. The closed meeting ended and Mr. Morris was under the impression that the instructions of Mr. Whilemsen would be followed.

147.    The session was a closed meeting but in violation of Utah Public records laws and Mr. Morris's due process, the proceeding was not officially recorded even though no discussion of his professional competency was made or even discussed. The only discussion of his performance record that was had during the meeting was when Defendant Tait made her tangential statement about Mr. Morris' recusals and her insistence that he violate the law on her and the city's behest.

148.    The City has not produced a recording of the meeting pursuant to GRAMA requests.

149.    After the meeting Mr. Morris ran into Council Member Max Jackson in the parking lot at and he said something to the effect that if knew that Defendant Tait was upset at Plaintiff for having a conflict of interest in that former employee case he would have pulled her aside to inform her about the Rules of Professional Conduct because it was illegal what she was asking of Plaintiff. Mr. Morris thanked him, and then left feeling fearful, defeated, and beaten down, but felt like he had preserved his job until further investigation was made.

**Defendants Knight And Benson Produce A Resignation Letter**

150.    On or about 9 February 2022 at 4:57 P.M. Defendant Knight, or Defendant Benson, drafted a resignation letter intended for the Plaintiff.  (see Resignation Letter Metadata attached as Exhibit "C")

151.    The Meta data for the electronic file was produced by GRAMA request and shows that the file was created by Cynthia Benson, and stored on Jennie Knight's Microsoft desktop, in a folder entitled "Lambert."

152.    The meta data shows that it was last edited by Cynthia Bensen who took three (3) minutes to edit it.

153.    It is upon information and belief that the template was that of a resignation letter written for the other former employee by Jennie Knight and edited by Cynthia Benson to apply it to Mr. Morris.

154.    Both  Defendants  Knight and Benson knew, or should have reasonably inferred, that by drafting a letter of resignation to be handed to Plaintiff to sign, and with Plaintiff not asking them to draft it, that the letter was not voluntary.

155.    But Defendant Knight knew of the blackmail just five days before because she was present when it occurred. So she knew the letter that was being drafted was not voluntarily.

156.    Nevertheless the statements written for Mr. Morris expressly state that the resignation was voluntary, despite them knowing it was not.

### The Day of the Firing

157.    On the morning of 9 February 2022, Mr. Morris was at the City for court at 9:00 AM. He spoke with the court clerk and judge and expressed concerns about what happened and how he was being treated.

158.    While Mr. Morris was in Court that morning, Defendant Knight came to his office and asked a series of questions about the Planning Commission that was scheduled that evening.

159.    Defendant Knight admitted that all of this pressure to force him out was the doing of Defendant Tait and she said that he "should be mad" referencing how Defendant Tait was handling the situation poorly.

160.    Mr Morris told Defendant Knight that the Mayor is mishandling this matter and not following the law or the Municipal Code, and only the City Council can terminate him.

161.    During this conversation, Defendant Knight made comments about Mr. Morris' "lifestyle" which he understood to be discriminatory about his sexual orientation.

162.    Mr. Morris finished court and his work at the office and left after court and meeting with Defendant Knight.

163.    That afternoon before the Planning Commission meeting Mr. Morris received a text from Defendant Tait asking him to come to the City.

164.    He went to the Mayor's office and was met by Defendant Tait, Defendant Knight, and Jessica Hardy.

165.    Defendant Tait said that she did not like how the City Council meeting went the night before and Jessica Hardy put a resignation paper in front of Mr. Morris that he had never seen before and demanded he sign it.

166.    Mr Morris emphasizes that he did not draft his resignation letter and was not given time to review it or to consult with counsel.

167.    He instead was told it was an immediate resignation and told to sign it and if he did not sign it at the moment she would schedule a closed City Council meeting to expose Mr. Morris. (implying her threat from the days before) and then have the council vote to oust him.

168.  It was his first thought that it is illegal to vote in a closed meeting under the Utah Open Meetings Act and that Mr. Morris has specifically trained Defendant Tait and the City Council on the Open and Public Meetings Act they now threatened to violate.

169.  Defendant Tait was again acting illegally and Mr. Morris could no longer perform his duties as his client's executive was actively blackmailing him and proposing to him that she and the City were intending to violate the law under the Utah Open Meetings Act, whistleblowers act, and other criminal and civil violations.

170.  The Mayor made it clear that Mr. Morris would be excluded from this closed meeting and denied the right to defend himself.

171.  Mr. Morris recalls having been nauseated and disgusted at her behavior and disregard for the law, and then said to them that "this whole thing makes me so sick that I wanted to throw-up."

172.  He informed her that her handling of this matter was illegal and Defendant Tait said she would have no argument about it and that he was to sign and not have an opportunity to review this resignation letter with his own counsel, he barely had a chance to read it himself.

173.  Mr. Morris recalled the The Rules of Professional Conduct that dictate that when a client is insisting to break the law the lawyer must resign, and Mr. Morris signed the resignation under great duress and the assurance that his client was fully intent to not only break the law but to continue in the future to break the law.

174.  In Mr. Morris' mind at the time, he felt it best to resign to avoid being blackmailed further and to abide by the Rules of Professional Conduct so that he could find a later time to bring the appropriate complaint under the law.

175.  Additionally he found the Mayor's behavior both criminal and repugnant.

176.    He then realized that he was being targeted in substantially similar ways that the City was accused by citizens of targeting the other minorities, i.e. the same targeting that he had been trying to prevent through the preliminary investigations he had opened into the activities of Defendant Tait and Defendant Knight and the City.

**After The Firing**

177.    After the termination, Mr. Morris sought to have the City pay the benefits package he was entitled to under his employment agreement.

178.    Defendant Tait refused to give Mr. Morris the benefits package owed to him.

179.    The benefits were to be paid to all Department Heads upon separation as enshrined in the City's Personnel Policy adopted as a legislative function of the City Council.

180.    It is upon information and belief that Mr Morris did not receive his benefits because he was discriminated against on the basis of sex and retaliation on the basis of sex and his refusal to violate the law on the City's behalf and at the insistence of Defendant Tait.

181.    All other similarly situated employees received their benefits upon termination.

***Destruction of Records and Files***

182.    As the City administrator and City attorney Mr. Morris was the person in charge of initiating any new vendors for city services such as Outside email and IT services, negotiating contracts for them, and finding the new vendors.

183.    Prior to Mr. Morris' ouster, the City was ***not in any discussion with any new vendors*** nor any outside parties about changing IT services nor changing email providers.

184.    Within 30 days of Mr. Morris ouster the City under Defendants Tait and Knight, changed email vendors.

185. According to Defendants' counsel, the new vendor ported over all of the city's then current employees and the old vendor deleted all of the records, and emails, and public documents from Mr. Morris, and all past employee's inboxes, and storage files.

186. It is upon information and belief that Defendants Tait and Knight were either grossly negligent in negotiating and solidifying the vendor contract, or intentionally allowed the destruction of public records to cover their misdeeds.

187. As the city attorney and prosecutor Mr. Morris' emails and files contained exculpatory evidence in criminal matters that could legally be deleted.

188. As the City attorney And Administrator, those records included voting data and certifications that could not legally be destroyed.

189. As the City administrator, the email inbox contained literally thousands of public records, some 15 years of communications and city records that were attached thereto.

190. In addition to that however, it contained nearly all of the evidence of the allegations that Mr. Morris was investigating the city officials as described herein.

191. In every other jurisdiction where Mr. Morris has worked, no change of vendors and porting of data has ever been so rushed.

192. The process usually involves interviewing providers, taking of bids, then review of the bids, review of the proposed contract, then negotiating the contract, and all this before ever engaging in such an action, the process including the port of the data never takes less than 90 days.

193. Yet within 30 days of ousting Mr. Morris, using blackmail, Defendant Harrisville City, had destroyed, or allowed to be destroyed, 15 years of records including multiple documents incriminating the Defendants named herein, and their involvement with Mr. Young.

## Cover Up

194.    Mr. Morris through counsel and through the City's counsel informed the City of Harrisville and the City Counsel that the mayor had blackmailed him to resign.

195.    After informing the City Council, through counsel and the EEOC, that the mayor had blackmailed Mr. Morris into resigning while Mr. Morris was actively investigating the Mayor for public corruption, the City Council failed to send the matter to a third party outside investigator.

196.    The City  also failed to appoint the Mayor pro Tem to oversee and and conduct the the interface with the city's attorneys, instead, Defendant Tait and Defendant Knight were allowed to oversee the legal process, negotiations, mediations, etc and make decisions for the City in a case where they were both directly implicated and accused, and where the Mayor was accused of criminally blackmailing Mr. Morris.

197.    Mr. Morris reported all of this to the City Police Department. To his knowledge, as of the filing of the complaint, no criminal investigation into the blackmail has been opened.

198.    As far as Mr. Morris knows the City has purged most of the records of its acts through its alleged change of email vendors.

## SPECIFIC CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**(Wrongful Termination and Retaliation In Violation of The Utah Whistleblower Act)**

199.    Mr. Morris realleges and incorporates by reference all of the paragraphs and allegations set forth above and below.

200.    Plaintiff as employee of the City of Harrisville is entitled to whistleblower protections under Utah Code §67-21 et. seq.

201. The Utah Protection of Public Employees Act ("Act"), Utah Code Ann. § 67- 21-1 *et seq.*, protects employees who communicate or object to violations of a state or federal law, rule, or regulation. Specifically, Utah Code Ann. § 67-21-3(1)(a) states that a state government employer:

> "may not take adverse action against an employee because the employee . . . communicates in good faith . . . a violation or suspected violation of a law, rule, or regulation adopted under the law of this state . . . or . . . the United States; or [reports] gross mismanagement; abuse of authority; or unethical conduct."

202. Utah Code Ann. § 67-21-3(2) states that "[a]n employer may not take adverse action against an employee because an employee participates or gives information in an investigation, hearing, court proceeding, legislative or other inquiry, or other form of administrative review held by the public body."

203. Utah Code Ann. § 67-21-3(3) states that "[a]n employer may not take adverse action against an employee because the employee has objected to or refused to carry out a directive that the employee reasonably believes violates a law of this state . . . or the United States."

204. Utah Code Ann. § 67-21-3(4) states that "[a]n employer may not implement rules or policies that unreasonably restrict an employee's ability to document":

> "waste or misuse of public funds, property, or manpower; . . . a violation or suspected violation of any law, rule, or regulation; . . . or as it relates to a state government employer: . . . gross mismanagement . . . abuse of authority . . . or . . . unethical conduct."

205. As more specifically set forth above, Mr. Mr. Morris communicated in good faith: 1) violations of civil rights to the City of Marriott-Slaterville to Marriot-Stlatterville for which Harrisville then retaliated against him; 2) Defendants' demand that Morris violate the attorney Rules of Ethics on their behalf; 3) Defendants abuse of authority; 4) Defendants' unethical and illegal conduct; 5) and all while Mr. Morris was participating in and conducting

a preliminary investigation into the Defendant's multiple alleged violations of state and federal law.

206.    Defendants took adverse Action against Mr. Morris by retaliating against him, first with a series of microaggressions and then more substantive action.

207.    Blackmailing him with kompromat to force his resignation.

208.    And lastly refusing to pay the separation package owed him.

209.    Harrisville's actions constitute a violation of the Whistleblower Act and Mr. Morris has been injured as a result of Defendants' actions. Mr. Morris is entitled to back pay and benefits, seniority rights, reinstatement (or front pay and benefits in lieu of reinstatement), and interest (both pre and post-judgment).

210.    As a further result of Defendants' actions, Mr. Morris is also entitled to general damages due to his emotional distress and damage to his reputation, and loss of enjoyment of life.

211.    Mr. Morris is also entitled to recover his attorneys' fees and costs incurred in bringing this action.

## SECOND CAUSE OF ACTION

### (Unlawful Retaliation Under Title VII Against Harrisville City)

212.    Mr. Morris realleges and incorporates by reference all of the paragraphs and allegations set forth above and below.

213.    Mr. Morris engaged in protected activity under Title VII.  He, in good faith reported violations of sex discrimination to Marriot-Slatterville, Followed the rules of Ethics, Recused himself when necessary, hired outside counsel to represent both cities when he had to be recused,  In Harrisville, he conducted preliminary investigations into allegations that his client engaged in various types of discrimination and develop policy recommendations to

City Council to prevent such, participated in legal proceedings where he was a protected party under Title VII, including as a prosecutor exercising prosecutorial discretion, he refused to prosecute cases that did not pass constitutional muster; he reported in good faith to the city council and mayor and conducted the affairs of the city with efficiency in proper public faith.

214.    Harrisville took multiple adverse actions against Mr. Morris as a result thereof.  These include but are not limited to:  Unreasonably restricting his access to the internet at the city offices forcing him to work from home; then ordering him to return to the office but not restoring his internet access; taking his office space generally reserved for a department head, and giving to his direct report and later replacement Defendant Knight; discriminating against him for his foreign born, non-white, same sex spouse through microaggressions and snide comments; creation of and maintaining an hostile work environment; claiming that his firing was in relation to his handling of the Planet Auto matter where he was treated poorly after reprimanding Defendant Knight for violating a citizen's due process rights and creating a liability for the city; insisting he violate the attorney Rules of Professional Conduct by representing the city against his former clients and using that as an excuse at his firing; insisting he violate the attorney Rules of Professional Conduct by demanding he contact represented parties and creating an hostile work environment when he refused;  using that as an excuse in his firing; demanding he abuse power and misuse his office as city attorney to retaliate against a plaintiff citizen who both won a case against hte city and where the city had ongoing settlement obligations and their actions threatened to violate the Court Order; Interference with prosecutorial discretion to accomplish their discriminatory ends, and retaliation when he refused; interference with his prosecutorial discretion in handling

misdemeanor cases where he refused to prosecute, because no crime had been committed, but Defendants insisted he prosecute anyway; and firing him whilst he was conducting an investigation into citizen complaints that Defendants Tait and Knight, and the Harrisville police department were engaging in race, sex, and religious, discrimination to drive non-white, non-LDS, and non-hertero people from the city; removing him from the hiring committee when he endorsed the hire of a latina court clerk who also spoke spanish, for the city justice court; conspiring with an attorney who had obligations to Mr. Morris under the Rules of Professional Conduct to orchestrate Mr. Morris ouster; blackmailing him with alleged kompromat of an implied sexual nature, refusal to give him his contractually and statutorily earned benefits package, and destroying potentially 15 years of his attorney and city administrative files after his ouster.

215.    Harrisville's retaliation and ultimate termination of Mr. Morris are causally linked to his protected activities.

216.    Mr. Morris has been damaged as a result of Harrisville City's retaliation. He is entitled to recover all resulting damages including lost pay and benefits, future lost pay and benefits, and emotional distress damages.

217.    Mr. Morris is also entitled to all reasonable attorney's fees and costs incurred in bringing this action.

## THIRD CAUSE OF ACTION

**(Violation of Free Speech in Violation of 42 U.S.C. § 1983 against Harrisville City and all individual Defendants in their official and individual capacities)**

218.    Mr. Morris realleges and incorporates by reference all of the paragraphs and allegations set forth above and below.

219.    As set forth above, Mr. Morris spoke out on matters of public concern, more importantly he began investigations into citizen allegations of discrimination as they affected the legal rights of the citizens of Utah and City of Harrisville, and the transparency of one of its Municipalities. Namely Mr. Morris: 1) Spoke to City Council and City Employees against the city engaging in any discriminatory policies, 2) conducted city administrative affairs openly and non-discriminatorily against those who were not heterosexual, LDS, or White; 3) he trained city employees not to engage in discriminatory behavior and spoke openly about the protection of those principles; 4) he often stated publicly that discrimination would not be tolerated in Harrisville; 5) he received complaints of discrimination from citizens; 6) he opened investigations into those complaints as needed or required; 7) he spoke openly in favor hiring a latina, Spanish speaker, as the city justice court clerk and was then removed from the hiring committee; 8) he spoke openly about his husband who is a chinese national, and was met with scorn and contempt; 9) he displayed a family photo of he and his husband and children on his desk; 10) engaged in all manner of protected speech in favor of inclusion of all members of society, and 11) he filed of GRAMA requests in order to conduct his investigations and was stonewalled by city officials, 12) he spoke out against, and investigated allegations that the Defendants abused city offices and powers to target minorities; 13) he spoke openly to the City council about his refusal to violate the rules of professional conduct or the law on behalf of and at the demand of Mayor Tait; 14) he gently reprimanded his direct report for violating citizen's due process rights; 15) he reported the blackmail and  corrption to the appropriate authorities.

220.    Mr. Morris' speech was of a mixed nature, some in his official capacity, some in his personal capacity.

221. Mr. Morris' statements and actions were done in a manner which did not disrupt Harrisville City's operations.

222. Mr. Morris' protected speech, and/or Defendants' belief that he had engaged in protected speech, was a substantial or motivating factor in the Defendants' decision to terminate his employment and take other adverse actions against him. Defendants even admitted so in a city council meeting.

223. The individual Defendants, who were officials with final policy making authority, acted purposefully and intentionally to retaliate against Mr. Morris for exercising his First Amendment rights.

224. Harrisville City acted pursuant to a policy of retaliating against whistleblowers and ratified the actions of the individual Defendants by failing to take action to ensure that the retaliation did not occur.

225. By terminating Mr. Morris and taking other adverse actions against him, including blackmailing him with alleged kompromat of an implied sexual nature, and refusal to grant him his earned separation benefits, Defendants violated Mr. Morris' rights as protected under the First Amendment to the United States Constitution, pursuant to 42 U.S.C. § 1983.

226. Defendants acted under the color of law.

227. Defendants' conduct violated a clearly established constitutional right of free speech of which a reasonable person should have known.

228. Mr. Morris has been injured by Defendants' conduct and has suffered and will continue to suffer losses. Pursuant to 42 U.S.C. § 1983, he is entitled to all available relief, including

back pay, reinstatement and/or front pay, and actual and compensatory damages, as well as costs and attorney fees.

229.    The individual Defendants' conduct was willful and intentional, malicious, and exhibits reckless or callous indifference to Mr. Morris' constitutional rights, thereby entitling him to punitive damages.

## FOURTH CAUSE OF ACTION

### Sex Discrimination and Disparate Treatment Discrimination Under Title VII

230.    Mr. Morris realleges and incorporates by reference all of the paragraphs and allegations set forth above and below.

231.    Mr. Morris is a member of a protected class under Title VII.

232.    Harrisville took multiple adverse actions against Mr. Morris as a result thereof.  These include but are not limited to:   Discriminating against him for his foreign born, non-white, same sex spouse through microaggressions and snide comments; creation of and maintaining an hostile work environment; firing him whilst he was conducting an investigation into citizen complaints that Defendant Mayor Tait, Defendant Knight, and the Harrisville police department were engaging in race, sex, and religious, discrimination to drive non-white, non-LDS, and non-hetero people from the city; conspiring with an attorney who had obligations to Mr. Morris under the Rules of Professional Conduct (because that attorney represented Marriot Slatterville in a personnel matter where Mr Morris as the City attorney was required to report a sex discrimination matter that had happened to him) to orchestrate Mr. Morris ouster; blackmailing him with alleged kompromat of an implied sexual nature, refusal to give him his contractually and statutorily earned benefits package, and destroying 15 years of his attorney and city administrative files, and stonewalling his GRAMA requests.

233.    Harrisville's discrimination and ultimate termination of Mr. Morris are causally linked to his membership in a protected class.

234.    Mr. Morris has been damaged as a result of Harrisville City's retaliation. He is entitled to recover all resulting damages including lost pay and benefits, future lost pay and benefits, and emotional distress damages.

235.    Mr. Morris is also entitled to all reasonable attorney's fees and costs incurred in bringing this action.

### FIFTH CAUSE OF ACTION

**(Sex Discrimination In Violation of 42 U.S.C. § 1983 against Harrisville City and all individual Defendants in their official and individual capacities.)**

236.    Mr. Morris realleges and incorporates by reference all of the paragraphs and allegations set forth above and below.

237.    Mr. Morris is a member of a protected class under 42 U.S.C. § 1983.

238.    Defendants took multiple adverse actions against Mr. Morris as a result thereof.  These include but are not limited to:   Discriminating against him for his foreign born, non-white, same sex spouse through microaggressions and snide comments; creation of and maintaining an hostile work environment; firing him whilst he was conducting an investigation into citizen complaints that Defendant Mayor Tait, Defendant Knight, and the Harrisville police department were engaging in race, sex, and religious, discrimination to drive non-white, non-LDS, and non-hetero people from the city; conspiring with an attorney who had obligations to Mr. Morris under the Rules of Professional Conduct (because that attorney represented Marriot Slatterville in a personnel matter where Mr Morris as the City attorney was required to report a sex discrimination matter that had happened to him) to orchestrate Mr. Morris ouster; drafting a false statement as a resignation letter and presenting Mr. Morris

with the letter while blackmailing him with alleged kompromat of an implied sexual nature; refusal to give him his contractually and statutorily earned benefits package that other heterosexual similarly situated employees received upon separation, and destroying 15 years of his attorney and city administrative files, and stonewalling his GRAMA requests.

239. Defendants' discrimination and ultimate termination of Mr. Morris are causally linked to his membership in a protected class.

240. Mr. Morris has been injured by Defendants' conduct and has suffered and will continue to suffer losses. Pursuant to 42 U.S.C. § 1983, he is entitled to all available relief, including back pay, reinstatement and/or front pay, and actual and compensatory damages, as well as costs and attorney fees.

241. The individual Defendants' conduct was willful and intentional, malicious, and exhibits reckless or callous indifference to Mr. Morris' constitutional rights, thereby entitling him to punitive damages.

### SIXTH CAUSE OF ACTION

**(Violation of Procedural and Substantive Due Process in Violation of 42 U.S.C. § 1983 against the City of Harrisville and all individual Defendants in their official and individual capacities)**

242. Mr. Morris realleges and incorporates by reference all of the paragraphs and allegations set forth above and below.

243. Mr. Morris had a property interest in his employment with Harrisville City.

244. Mr. Morris was entitled to only be discharged for cause, and to be given adequate notice of the charges against him, an explanation of the evidence against him, and a meaningful opportunity to present his side of the story to an impartial decision-maker.

245.    After his firing Harrisville maintained that Mr. Morris voluntarily resigned and that even if he had not he was to be terminated for cause.

246.    Mr. Morris was entitled to be treated consistently with respect to his coworkers who were alleged to have engaged in conduct of similar or more severity.

247.    Mr. Morris was denied due process of law by Defendants in violation of his Fourteenth Amendment due process rights when Defendants moved his office, and fired by Defendant Tait who, did not have the legal power to do so; it was done without basis, and without providing him with means to object to the process; nor allowing him to review the forced resignation letter with counsel;  targeted him for termination without cause; falsified reasons for his termination; refused to allow him access to his records to defend himself; committed the crime of blackmailing him with alleged kompromat of an implied sexual nature to force his resignation; and refused to provide him with the contractual and statutory benefits to which he was entitled and that other similarly  situation but hetero sexual employees received upon separation;

248.    These actions by Defendants violated Mr. Amann's rights as protected under the Due Process Clause, pursuant to 42 U.S.C. § 1983.

249.    Defendants acted under the color of law.

250.    Defendants' conduct violated a clearly established constitutional right of due process, of which a reasonable person should have known.

251.    The individual Defendants, who were officials with final policy making authority, acted purposefully and intentionally to deprive Mr. Morris of his rights to due process.

252.    Harrisville City ratified the actions of the individual Defendants by failing to take action to ensure that the retaliation did not occur.

253.    Mr. Morris has been injured by Defendants' conduct and has suffered and will continue to suffer losses. Pursuant to 42 U.S.C. § 1983, he is entitled to all available relief, including back pay, reinstatement and/or front pay, and actual and compensatory damages, as well as costs and attorney fees.

254.    The individual Defendants' conduct was willful and intentional, malicious, and exhibits reckless or callous indifference to Mr. Morris' constitutional rights, thereby entitling him to punitive damages.

## SEVENTH CAUSE OF ACTION
### Breach of Contract

255.    Mr. Morris realleges and incorporates by reference all of the paragraphs and allegations set forth above and below.

256.    Harrisville City had a written contract with Mr. Morris.

257.    The common purpose of the contract was for Mr. Morris to provide services to the City of Harrisville in the form of Legal Services as City Attorney and City Prosecutor, and administrative services as the City Administrator (i.e. City manager).

258.    Mr. Morris' contract with the Harrisville City and the city's internal codes and policies gave Mr. Morris status as a department head and entitled him to certain benefits thereby.

259.    The internal policies of the City, and the City Code vested the authority for hiring and firing the City Administrator and City Attorney solely with the City Council, not with the Mayor.

260.   Mr. Morris performed work under various contracts with the City over approximately 16 years.

261.   As part of their contract enumerated in the City's internal policies Mr. Morris and all Department Heads were at the time entitled to a severance that included up to one (1) year pay for a Department Head working for the City over ten (10) years, among other benefits. The purposes for this policy is to discourage political firings, and mitigate economic damages for an employee.

262.   In addition, Harrisville City has enacted express and implied policies and city ordinances through which it makes certain promises to its employees.

263.   Mr. Morris' performance was exemplary evidenced by years of commendations for his work, including commendations just prior to his ouster.

264.   At no time did Mr. Morris' performance fall below acceptable industry standards.

265.   Mr. Morris  performed these services in good faith and with high commendations from the City Council for approximately sixteen (16) years.

266.   These policies include an agreement that employees will not be subject to retaliation for complaining about workplace harassment or support the claims of other employees who complain of harassment, and that their complaints will be adequately and fairly investigated.

267.   Harrisville City targeted Mr. Morris by retaliating against him, and for his sexual orientation.

268.   Upon termination Mr. Morris was denied the benefits due him under his contractual employment agreement that included the city's policies, practices, and codes.

269.  Because of Harrisville's breaches of its written and/or implied promises, Mr.

Morris is entitled to all damages he has suffered due to Harrisville City's breaches.

## REQUEST FOR JURY TRIAL

Mr. Morris requests that this matter be tried before a jury.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Morris prays for the following relief:

1.  For injunctive relief;

2.  For reinstatement of Mr. Morris' employment with Harrisville City and/or front pay in lieu of reinstatement;

    3.  For the payment of lost wages, benefits, and seniority rights;

    4.  For reimbursement due to negative tax consequences from lump sum payments;

5.  For compensatory damages;

6.  For punitive damages as allowable;

7.  For costs and attorneys' fees as allowed by law;

8.   For pre- and post-judgment interest at the highest lawful rate;

9.   For other and further equitable relief as the Court deems just and proper in this case to make Mr. Morris whole and achieve justice.

**THIS  SPACE LEFT INTENTIONALLY BLANK**

STATE OF UTAH            )

                                            SS:

COUNTY OF WEBER        )


The facts contained herein have been verified as truthful by Plaintiff who is above the age

of majority and gives these statements voluntarily and to the best of his recollection.


William M. Morris Esq.


Being Subscribed and Sworn before me this ___5___ the day of __February__ 2024.


NOTARY PUBLIC



DANA SPENCER
NOTARY PUBLIC ● STATE of UTAH
COMMISSION NO. 719702
COMM. EXP. 09-11-2025


Morris v. City of Harrisville et. al
Complaint
Page 40 of 45

Approved as to Form:

/s/ Don James Knight Ord III, Esq.

**Don JAMES Knight ORD III, Esq.**
The Ord Firm, PC
Attorney for Plaintiff

# EXHIBIT "A"

Right To Sue Letter from EEOC and Accompanying Email Chain

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Phoenix District Office**
3300 North Central Avenue, Suite 690
Phoenix, AZ 85012
(602) 661-0002
Website:  www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 09/29/2023

**To:** William M. Morris, Esq.
950 W PINNOCCHIO DR.
SALT LAKE CITY, UT 84116

Charge No: 540-2023-01183

EEOC Representative and email:    JEREMY YUBETA
Manager
Jeremy.Yubeta@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

For Nancy Sienko
Acting District Director

**Cc:**
Jill N Hunt
Harrisville City, Utah
363 W. Independence Blvd
Harrisville, UT 84404

Matthew Church
Manning Curtis Bradshaw & Bednar PLLC
215 S STATE ST STE 350
Salt Lake City, UT 84111

Don James, Ord
The Ord Firm, PC
950 W. Pinnocchio Dr.
Salt Lake City, UT 84116

Please retain this notice for your records.

 Gmail

## RE: Morris V. Harrisville City, UT - EEOC Complaint No. 540-2023-01183

10 messages

---

**PATRICIA MINER** <PATRICIA.MINER@eeoc.gov>      Tue, Dec 26, 2023 at 9:28 AM
To: James <James.Ord@theordfirm.com>
Cc: Bill Morris <morrisut@gmail.com>

Dear Mr. Ord,

I apologize for the delay in responding to this email.  I was out of the office for some days.
Please note the corrected case number above.

This case was closed and a Notice of Right to Sue issued by the EEOC on September 29,
2023.  Therefore I'm confused by the below email.

Thank you.

## Patricia Miner

Patricia Miner

Supervisory Investigator

EEOC

3300 N. Central Ave., Ste. 690

Phoenix, AZ  85012

(602) 661-0040

patricia.miner@eeoc.gov

This message contains information that may be confidential and privileged. Unless you are the addressee (or authorized to receive
for the addressee), you may not use, copy, or disclose to anyone the message or information contained in the message. If you have
received the message in error, please advise the sender or reply email at: patricia.miner@eeoc.gov and delete the message.

**From:** James <James.Ord@theordfirm.com>
**Sent:** Friday, December 8, 2023 2:33 PM
**To:** PATRICIA MINER <PATRICIA.MINER@EEOC.GOV>
**Cc:** Bill Morris <morrisut@gmail.com>
**Subject:** Morris V. Harrisville City, UT - EEOC Complaint No. 540-2023-01127

You don't often get email from james.ord@theordfirm.com. Learn why this is important

**CAUTION:** The sender of this message is external to the EEOC network. Please use care when clicking on links and responding with sensitive information. Forward suspicious emails to phishing@eeoc.gov.

Dear Ms. Miner,

Attached you will find the meta data for my client's resignation letter that the city claims that my client voluntarily resigned.

The Meta data shows that the letter was produced by Jennie Knight and Cynthia Benson (the Mayor's assistant)

This evidence, produced by the City Pursuant to GRAMA request shows that my client did not produce his resignation letter and that it was not voluntary as the city initially claimed in it's defense letter. (See Harrisville City Position Statement Page 5 Paragraph 1)

My client has continually maintained that he was presented with the letter and told to either sign it or that the mayor would release the alleged kompromat. This evidence corroborates this part of my client's allegations.

As a result of this evidence, we request that the EEOC immediately subpoena the City's unredacted copies of Attorney Scott Young's bills. We are attaching the redacted copies. Mr. Morris has maintained that: At his forced resignation meeting, the Mayor specifically told him that she had been speaking with Scott Young, Esq. and that the two had formulated a three step plan to get rid of Mr. Morris.

To that end we sought the attorney bills that the city paid to Scott Young.  The City provided the bills with full redaction making them virtually meaningless to any outsider.

However, my client was the City's attorney for 15 years. He knows that that city had no open legal matters with Scott Young or Scott's firm for over a year prior. The fact that the City Paid Scott Young to consult on a personnel matter as the non redacted bills show, suggests that what my client says the mayor told him about her coordination with Scott Young was in fact true.

As we discover the evidence that corroborates my client's stated facts, it becomes apparent that the city has not been forthright and that the firing was very likely the retaliatory, discriminatory  action, that my client claimed it was.





Kindest regards,

----------

**Dᵒⁿ James Knight Ord III, Esq.**
The Ord Firm, PC
Pinrose Cottage
PO Box 16688
Salt Lake City, UT 84116
Office +1.310.494.6296 | Mobile: 801.358.9395 | Fax: +1.801.901.8181
Email: James.Ord@TheOrdFirm.com | Website: www.TheOrdFirm.com

---

E-mail is not a secure transmission medium and should not be used to communicate confidential information. If you elect to send or receive information via e-mail, The Ord Firm, PC cannot assure its security and will not be liable if it is intercepted or viewed by another party. The information in this e-mail is confidential and may be legally privileged. It is intended solely for the addressee. Access to this e-mail by anyone else is unauthorized. If you are not the intended recipient, any disclosure, copying, distribution or any action taken or omitted based on this information is prohibited and may be unlawful. If you are not the intended recipient, please reply to the sender that you received this e-mail in error and that you have deleted this e-mail and have destroyed any and all copies of this e-mail.

---

**James** <James.Ord@theordfirm.com>          Tue, Dec 26, 2023 at 10:00 AM

To: PATRICIA MINER <PATRICIA.MINER@eeoc.gov>

Mis Miner,

We never received any notice of this.  This is entirely blindsiding.  No notice, no letter, no findings, nothing.  Please send us a copy of the right to sue notice.

----------

**Dᵒⁿ James Knight Ord III, Esq.**
The Ord Firm, PC
Pinrose Cottage
PO Box 16688
Salt Lake City, UT 84116
Office +1.310.494.6296 | Mobile: 801.358.9395 | Fax: +1.801.901.8181
Email: James.Ord@TheOrdFirm.com | Website: www.TheOrdFirm.com

E-mail is not a secure transmission medium and should not be used to communicate confidential information. If you elect to send or receive information via e-mail, The Ord Firm, PC cannot assure its security and will not be liable if it is intercepted or viewed by another party. The information in this e-mail is confidential and may be legally privileged. It is intended solely for the addressee. Access to this e-mail by anyone else is unauthorized. If you are not the intended recipient, any disclosure, copying, distribution or any action taken or omitted based on this information is prohibited and may be unlawful. If you are not the intended recipient, please reply to the sender that you received this e-mail in error and that you have deleted this e-mail and have destroyed any and all copies of this e-mail.

[Quoted text hidden]

---

**PATRICIA MINER** <PATRICIA.MINER@eeoc.gov>                    Thu, Dec 28, 2023 at 9:37 AM
To: James <James.Ord@theordfirm.com>

Good Morning Mr. Ord,


Attached is a copy of the Notice of Right to Sue.  Please note that the 90 day period to file a lawsuit runs from the date you receive the notice.  I apologize you did not receive notification.

[Quoted text hidden]

 **540-2023-01183MorrisClosure Notice-NRTS.pdf**
238K

---

**James** <James.Ord@theordfirm.com>                    Thu, Dec 28, 2023 at 11:20 AM
To: PATRICIA MINER <PATRICIA.MINER@eeoc.gov>

Ms. Miner,

This notice was issued on 29 September. We are just now getting it today.  Did you send it to the other parties in September?  Please advise.

----------

**Dᵒⁿ James Knight Ord III, Esq.**
The Ord Firm, PC

Pinrose Cottage
PO Box 16688
Salt Lake City, UT 84116
Office +1.310.494.6296 | Mobile: 801.358.9395 | Fax: +1.801.901.8181
Email: James.Ord@TheOrdFirm.com | Website: www.TheOrdFirm.com

E-mail is not a secure transmission medium and should not be used to communicate confidential information. If you elect to send or receive information via e-mail, The Ord Firm, PC cannot assure its security and will not be liable if it is intercepted or viewed by another party. The information in this e-mail is confidential and may be legally privileged. It is intended solely for the addressee. Access to this e-mail by anyone else is unauthorized. If you are not the intended recipient, any disclosure, copying, distribution or any action taken or omitted based on this information is prohibited and may be unlawful. If you are not the intended recipient, please reply to the sender that you received this e-mail in error and that you have deleted this e-mail and have destroyed any and all copies of this e-mail.

[Quoted text hidden]

---

**James** <James.Ord@theordfirm.com>      Thu, Dec 28, 2023 at 11:21 AM
To: Bill Morris <morrisut@gmail.com>

----------

**Dᵒⁿ James Knight Ord III, Esq.**
The Ord Firm, PC
Pinrose Cottage
PO Box 16688
Salt Lake City, UT 84116
Office +1.310.494.6296 | Mobile: 801.358.9395 | Fax: +1.801.901.8181
Email: James.Ord@TheOrdFirm.com | Website: www.TheOrdFirm.com

E-mail is not a secure transmission medium and should not be used to communicate confidential information. If you elect to send or receive information via e-mail, The Ord Firm, PC cannot assure its security and will not be liable if it is intercepted or viewed by another party. The information in this e-mail is confidential and may be legally privileged. It is intended solely for the addressee. Access to this e-mail by anyone else is unauthorized. If you are not the intended recipient, any disclosure, copying, distribution or any action taken or omitted based on this information is prohibited and may be unlawful. If you are not the intended recipient, please reply to the sender that you received this e-mail in error and that you have deleted this e-mail and have destroyed any and all copies of this e-mail.

[Quoted text hidden]

 **540-2023-01183MorrisClosure Notice-NRTS.pdf**
238K

---

**James** <James.Ord@theordfirm.com>      Thu, Dec 28, 2023 at 11:25 AM
To: Bill Morris <morrisut@gmail.com>

----------

**Dᵒⁿ James Knight Ord III, Esq.**
The Ord Firm, PC
Pinrose Cottage
PO Box 16688
Salt Lake City, UT 84116
Office +1.310.494.6296 | Mobile: 801.358.9395 | Fax: +1.801.901.8181

Email: James.Ord@TheOrdFirm.com  |  Website: www.TheOrdFirm.com

E-mail is not a secure transmission medium and should not be used to communicate confidential information. If you elect to send or receive information via e-mail, The Ord Firm, PC cannot assure its security and will not be liable if it is intercepted or viewed by another party. The information in this e-mail is confidential and may be legally privileged. It is intended solely for the addressee. Access to this e-mail by anyone else is unauthorized. If you are not the intended recipient, any disclosure, copying, distribution or any action taken or omitted based on this information is prohibited and may be unlawful. If you are not the intended recipient, please reply to the sender that you received this e-mail in error and that you have deleted this e-mail and have destroyed any and all copies of this e-mail.

[Quoted text hidden]

---

**PATRICIA MINER** <PATRICIA.MINER@eeoc.gov>　　　　　　　　　　　　Thu, Dec 28, 2023 at 3:23 PM
To: James <James.Ord@theordfirm.com>

It appears the database did not send notice to the Respondent.

Again – my apologies.

[Quoted text hidden]

---

**James** <James.Ord@theordfirm.com>　　　　　　　　　　　　　　　Fri, Dec 29, 2023 at 2:18 PM
To: PATRICIA MINER <PATRICIA.MINER@eeoc.gov>
Bcc: Bill Morris <morrisut@gmail.com>

Ms. Miner,

I understand. However I am concerned that the Opposing Parties will move to dismiss our court filing for lack of jurisdiction due to tolling of the statute of limitations. I believe this information provides the necessary data to overcome that argument, but it would be very helpful to know if your office sent the letter to the opposing party back in September so that I might be prepared.

Thank you in advance for your assistance in this matter.

Kindest regards,

----------

**Dᵒⁿ James Knight Ord III, Esq.**
The Ord Firm, PC
Pinrose Cottage
PO Box 16688
Salt Lake City, UT 84116
Office +1.310.494.6296 | Mobile: 801.358.9395 | Fax:  +1.801.901.8181
Email: James.Ord@TheOrdFirm.com  |  Website: www.TheOrdFirm.com

E-mail is not a secure transmission medium and should not be used to communicate confidential information. If you elect to send or receive information via e-mail, The Ord Firm, PC cannot assure its security and will not be liable if it is intercepted or viewed by another party. The information in this e-mail is confidential and may be legally privileged. It is intended solely for the addressee. Access to this e-mail by anyone else is unauthorized. If you are not the intended recipient, any disclosure, copying, distribution or any action taken or omitted based on this information is prohibited and may be unlawful. If you are not the intended recipient, please reply to the sender that you received this e-mail in error and that you have deleted this e-mail and have destroyed any and all copies of this e-mail.

[Quoted text hidden]

---

**PATRICIA MINER** <PATRICIA.MINER@eeoc.gov>                    Tue, Jan 2, 2024 at 7:49 AM
To: James <James.Ord@theordfirm.com>

Good Morning –

I do not see anything in the record indicating we sent the Notice of Right to Sue to the
Respondent.  Typically if it is mailed by a clerk it is noted.  There is no note.

Thanks, Pat

[Quoted text hidden]

---

**James** <James.Ord@theordfirm.com>                    Tue, Jan 2, 2024 at 8:57 AM
To: PATRICIA MINER <PATRICIA.MINER@eeoc.gov>

Thank you for the clarification.
[Quoted text hidden]

# EXHIBIT "B"

Redacted Attorney Bills





# EXHIBIT "C"

Resignation Letter Metadata

# CITY OF HARRISVILLE

**50932**

VENDOR: 2504  SNOW CHRISTENSEN & MARTINEAU                          3/24/2022          50932

| DATE | INVOICE # | DESCRIPTION | AMOUNT |
|------|-----------|-------------|--------|
| 1/21/2022 | 493140 . | PROFESSIONAL SERVICES RENDERED IN DECEMBER | 945.00 |
| 2/11/2022 | 494129 | PROFESSIONAL SERVICES RENDERED IN JANUARY | 350.00 |
| 3/10/2022 | 495654 | PROFESSIONAL SERVICES RENDERED IN FEBRUARY | 180.00 |

Total Amount:          $1,475.00

SNOW
CHRISTENSEN
& MARTINEAU

A Professional Corporation
10 Exchange Place, 11th Floor
Salt Lake City, Utah 84111
Main: 801.521.9000
www.scmlaw.com

January 21, 2022
Invoice #:  493140

Harrisville City
Foster Bateman
363 West Independence Blvd.
Harrisville, UT  84404

---

## INVOICE SUMMARY

For professional services rendered and costs advanced through December 31, 2021:

**Matter Number: 28735.4**

**RE:   Employment General**

| | |
|---|---|
| Professional Services | $ 945.00 |
| Total Costs Advanced | $ .00 |
| **TOTAL THIS INVOICE** | **$ 945.00** |

GL  10-45-1030
Signature

SNOW CHRISTENSEN & MARTINEAU

Invoice #:  493140

January 21, 2022

**PROFESSIONAL SERVICES RENDERED**

| Date | Atty | Description | Hours | Amount |
|---|---|---|---|---|
| 12/05/21 | RSY | Review policies and email Mayor regarding ███ ████ | .50 | 175.00 |
| 12/07/21 | RSY | Review policies and email Mayor regarding ███ ███ | .80 | 280.00 |
| 12/08/21 | RSY | Review policies for ██████ | .50 | 175.00 |
| 12/09/21 | RSY | Review policies and outline of questions for phone conference with Mayor regarding ████ | .20 | 70.00 |
| 12/09/21 | RSY | Phone conference with Mayor regarding ███ ██ | .70 | 245.00 |

**TOTAL PROFESSIONAL SERVICES** $ 945.00

**SUMMARY OF PROFESSIONAL SERVICES**

| Name | Rate | Hours | Total |
|---|---|---|---|
| S. Young | 350.00 | 2.70 | 945.00 |
| **TOTALS** | | **2.70** | **$ 945.00** |

**TOTAL THIS INVOICE** **$ 945.00**

SNOW
CHRISTENSEN
& MARTINEAU

A Professional Corporation
10 Exchange Place, 11ᵗʰ Floor
Salt Lake City, Utah 84111
*Main: 801.521.9000*
www.scmlaw.com

January 21, 2022
Invoice #:  493140
EIN: 87-0298631

Harrisville City
Foster Bateman
363 West Independence Blvd.
Harrisville, UT  84404

# REMITTANCE ADVICE

**Matter Number: 28735.4**

**RE:   Employment General**

| **BALANCE DUE THIS INVOICE** | **$ 945.00** |
| --- | --- |

## PAY YOUR BILL ONLINE AT www.scmlaw.com

Please return this advice with payment to:

Snow Christensen & Martineau
Attn: Accounts Receivable
P.O. Box 45000
Salt Lake City, Utah 84145-5000

**Wire Transfer Instructions:**



Snow Christensen & Martineau
Please reference matter and invoice number

**To Pay by Credit Card:**

___ Visa   ___ Mastercard   ___ American Express
Account Number: _____
Expiration Date: _____/_____
Security Code: _____
Amount To Be Charged: $_____
Name on Account: _____
Signature: _____

**DUE UPON RECEIPT**

*Thank you for your business.*



**SNOW CHRISTENSEN & MARTINEAU**

A Professional Corporation
10 Exchange Place, 11th Floor
Salt Lake City, Utah 84111
Main: 801.521.9000
www.scmlaw.com

February 11, 2022
Invoice #: 494129

Harrisville City
Foster Bateman
363 West Independence Blvd.
Harrisville, UT  84404

---

## INVOICE SUMMARY

For professional services rendered and costs advanced through January 31, 2022:  GL  10-45-630

Signature

**Matter Number: 28735.4**

**RE:  Employment General**

| | |
|---|---|
| Professional Services | $ 350.00 |
| Total Costs Advanced | $ .00 |
| **TOTAL THIS INVOICE** | **$ 350.00** |

ACCOUNTS RECEIVABLE INVOICES OUTSTANDING

| | |
|---|---|
| Previous Balance | $ 945.00 |
| **TOTAL BALANCE DUE** | **$ 1,295.00** |

Billing questions can be directed to 801-322-9308

SNOW CHRISTENSEN & MARTINEAU

Invoice #:  494129                                                    February 11, 2022

**PROFESSIONAL SERVICES RENDERED**

| Date | Atty | Description | Hours | Amount |
|------|------|-------------|-------|--------|
| 1/12/22 | RSY | Telephone conference to counsel ███████████ ███████████ | 1.00 | 350.00 |

**TOTAL PROFESSIONAL SERVICES**      **$ 350.00**

**SUMMARY OF PROFESSIONAL SERVICES**

| Name | Rate | Hours | Total |
|------|------|-------|-------|
| S. Young | 350.00 | 1.00 | 350.00 |
| **TOTALS** | | **1.00** | **$ 350.00** |

**TOTAL THIS INVOICE**      **$ 350.00**



**SNOW CHRISTENSEN & MARTINEAU**

A Professional Corporation
10 Exchange Place, 11th Floor
Salt Lake City, Utah 84111
Main: 801.521.9000
www.scmlaw.com

February 11, 2022
Invoice #:  494129
EIN: 87-0298631

Harrisville City
Foster Bateman
363 West Independence Blvd.
Harrisville, UT  84404

## REMITTANCE ADVICE

**Matter Number: 28735.4**

**RE:  Employment General**

| | |
|---|---|
| **BALANCE DUE THIS INVOICE** | **$ 350.00** |
| Previous Balance | $ 945.00 |
| **TOTAL BALANCE DUE** | **$ 1,295.00** |

### PAY YOUR BILL ONLINE AT www.scmlaw.com

Please return this advice with payment to:

Snow Christensen & Martineau
Attn: Accounts Receivable
P.O. Box 45000
Salt Lake City, Utah 84145-5000

**Wire Transfer Instructions:**



Snow Christensen & Martineau
Please reference matter and invoice number

**To Pay by Credit Card:**

___ Visa  ___ Mastercard  ___ American Express
Account Number: _____
Expiration Date: _____/_____
Security Code: _____
Amount To Be Charged: $_____
Name on Account: _____
Signature: _____

### DUE UPON RECEIPT

*Thank you for your business.*

Billing questions can be directed to 801-322-9308

SNOW CHRISTENSEN & MARTINEAU

Invoice #:  494129

February 11, 2022

## ACCOUNTS RECEIVABLE INVOICES OUTSTANDING

| Invoice Number | Date | Invoice Total | Payments Received | Ending Balance |
|---|---|---|---|---|
| 493140 | 1/21/22 | 945.00 | .00 | 945.00 |

|  |  |
|---|---|
| Previous Balance | $ 945.00 |
| Balance Due This Invoice | $ 350.00 |
| **TOTAL BALANCE DUE** | **$ 1,295.00** |

3



**SNOW CHRISTENSEN & MARTINEAU**

A Professional Corporation
10 Exchange Place, 11ᵗʰ Floor
Salt Lake City, Utah 84111
Main: 801.521.9000
www.scmlaw.com

March 10, 2022
Invoice #:  495654

Harrisville City
Foster Bateman
363 West Independence Blvd.
Harrisville, UT  84404

## INVOICE SUMMARY

For professional services rendered and costs advanced through February 28, 2022:

GL _10-45-630_

Signature _____

**Matter Number: 28735.4**

**RE:   Employment General**

| | |
|---|---|
| Professional Services | $ 180.00 |
| Total Costs Advanced | $ .00 |
| **TOTAL THIS INVOICE** | **$ 180.00** |

ACCOUNTS RECEIVABLE INVOICES OUTSTANDING

| | |
|---|---|
| Previous Balance | $ 1,304.45 |
| **TOTAL BALANCE DUE** | **$ 1,484.45** |

Billing questions can be directed to 801-322-9308

SNOW CHRISTENSEN & MARTINEAU

Invoice #:  495654                                                                                    March 10, 2022

**PROFESSIONAL SERVICES RENDERED**

| Date | Atty | Description | Hours | Amount |
|------|------|-------------|-------|--------|
| 2/09/22 | RSY | Telephone conference with mayor regarding ███ ███████ | .50 | 180.00 |

| | TOTAL PROFESSIONAL SERVICES | $ 180.00 |
|---|---|---|

**SUMMARY OF PROFESSIONAL SERVICES**

| Name | Rate | Hours | Total |
|------|------|-------|-------|
| S. Young | 360.00 | .50 | 180.00 |
| **TOTALS** | | **.50** | **$ 180.00** |

| | TOTAL THIS INVOICE | $ 180.00 |
|---|---|---|

2

SNOW CHRISTENSEN & MARTINEAU

Invoice #:   495654

March 10, 2022

## ACCOUNTS RECEIVABLE INVOICES OUTSTANDING

| Invoice Number | Date | Invoice Total | Payments Received | Ending Balance |
|---|---|---|---|---|
| 493140 | 1/21/22 | 945.00 | .00 | 945.00 |
| 494129 | 2/11/22 | 350.00 | .00 | 350.00 |
| 99992203 | 3/01/22 | 9.45 | .00 | 9.45 |

| | |
|---|---|
| Previous Balance | $ 1,304.45 |
| Balance Due This Invoice | $ 180.00 |
| **TOTAL BALANCE DUE** | **$ 1,484.45** |



A Professional Corporation
10 Exchange Place, 11ᵗʰ Floor
Salt Lake City, Utah 84111
Main: 801.521.9000
www.scmlaw.com

March 10, 2022
Invoice #:  495654
EIN: 87-0298631

Harrisville City
Foster Bateman
363 West Independence Blvd.
Harrisville, UT  84404

## REMITTANCE ADVICE

**Matter Number: 28735.4**

**RE:   Employment General**

| | |
|---|---|
| **BALANCE DUE THIS INVOICE** | **$ 180.00** |
| Previous Balance | $ 1,304.45 |
| **TOTAL BALANCE DUE** | **$ 1,484.45** |

### PAY YOUR BILL ONLINE AT www.scmlaw.com

Please return this advice with payment to:

Snow Christensen & Martineau
Attn: Accounts Receivable
P.O. Box 45000
Salt Lake City, Utah 84145-5000

**Wire Transfer Instructions:**



Snow Christensen & Martineau
Please reference matter and invoice number

**To Pay by Credit Card:**

___ Visa    ___ Mastercard    ___ American Express
Account Number: _____
Expiration Date: _____/_____
Security Code: _____
Amount To Be Charged: $_____
Name on Account: _____
Signature: _____

**DUE UPON RECEIPT**

*Thank you for your business.*

Billing questions can be directed to 801-322-9308